**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marvin FULLERTON, Defendant–
Appellant.**

No. 98–3472.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1999.

Decided Aug. 13, 1999.

Rehearing Denied Sept. 14, 1999.

Edward F. Feran (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for Plaintiff–Appellee.

Paul Mancino, Jr. (argued and briefed), Mancino, Mancino & Mancino, Cleveland, OH, for Defendant–Appellant.

Before: MARTIN, Chief Judge; JONES and SUHRHEINRICH, Circuit Judges.

BOYCE F. MARTIN, JR., Chief Judge.

Marvin Fullerton appeals his conviction for distribution of cocaine and the district court's denial of both his motion for judgment of acquittal and motion for a new trial.

## I.

In August 1997, the Drug Enforcement Agency, in cooperation with the East Cleveland, Ohio Police Department, conducted an investigation into local drug trafficking. Special Agents Tim Jones and John Clayton of the DEA set up a drug buy between an informant and a dealer known as "Romeo"[1] on August 4. The agents dialed "Romeo's" pager number,

---

1. Agent Clayton testified that, in his experience, drug dealers often identify themselves by "street names" instead of their legal names when selling drugs.

690–4946, and "Romeo" told the informant to meet him at 1827 Knowles Avenue.

The agents testified that at approximately 11:15 p.m., the informant purchased cocaine from "Romeo." Jones had a clear view of the transaction and was able to observe "Romeo." Clayton also observed the transaction. To make positive identification of "Romeo," after the informant left the scene, Clayton walked down the street, passing approximately one to two feet from "Romeo" and made eye contact with him. Clayton testified that "Romeo" asked him if he needed anything.

The agents set up a second drug buy from "Romeo" on August 6. Again they paged 690–4946. "Romeo" instructed the informant to meet him at the same location. Jones was approximately fifty yards away from the informant and "Romeo" as the transaction occurred and again was able to observe "Romeo." Clayton also witnessed the deal and drove past "Romeo" after the transaction was complete to verify his identity.

Over the next month, the agents observed "Romeo" at the Knowles Avenue location one to three times a week. "Romeo" was not immediately arrested because the agents were using the same informant as part of their on-going investigation of drug activity in this area. The agents were present, however, when "Romeo" was arrested on September 22, in front of 1827 Knowles Avenue, based upon the August 4 and 6 cocaine sales. The agents learned "Romeo's" actual identity, Marvin Fullerton, from identification found at the time of his arrest. Prior to the arrest, the agents believed the dealer known as "Romeo" to be a man named Larry Morgan. At trial, Jones and Clayton identified Fullerton as both the man they observed selling cocaine on August 4 and 6 and the man they saw arrested on September 22.

Because the investigation of drug activity in East Cleveland was conducted in cooperation with the East Cleveland Police Department, local police were on the scene when Fullerton was arrested and took him into their custody. At the time of the arrest the DEA, without a warrant, directed that an officer of the East Cleveland Police Department arrest Fullerton. Before putting Fullerton in the police cruiser, Clayton, the federal agent, searched Fullerton and recovered a pager. Clayton then dialed 690–4946, the number used to set up both the August 4 and 6 drug buys, and the confiscated pager responded.

For some reason unexplained in the record, we have no idea where Fullerton was from September 22, the day of the arrest, and September 25, when Clayton filed a complaint and affidavit with a United States Magistrate against Fullerton for distributing cocaine in violation of 21 U.S.C. § 841. On September 26, Fullerton made his first appearance before the magistrate. When he signed Clayton's complaint, a warrant was issued. Thus, between September 22 and September 26, no judicial officer had determined whether there was adequate probable cause to support Fullerton's September 22 warrantless arrest.

After an indictment and trial, on January 21, 1998, a jury found Fullerton guilty on two counts of distributing cocaine in violation of 21 U.S.C. § 841. On January 28, Fullerton filed a Fed.R.Crim.P. Rule 29(c) Motion for Judgment of Acquittal, or in the alternative, Motion for a New Trial, pursuant to Fed.R.Crim.P. Rule 33. The district court denied both motions. Fullerton timely filed an appeal.

## II.

■ On appeal, Fullerton argues that the district court improperly admitted the pager into evidence. He reasons that because the agents failed to have a magistrate determine whether there was probable cause for his arrest until September 26, over seventy-two hours after his arrest, allegedly in violation of *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct.

1661, 114 L.Ed.2d 49 (1991), the arrest was illegal and the seizure of the pager incident to the arrest was also illegal. Therefore, he argues that the arrest was without probable cause and that the district court should have suppressed the confiscated pager. The district court's legal conclusions on suppression issues are reviewed *de novo*, and its factual findings are reviewed under the clearly erroneous standard. *United States v. Dotson*, 49 F.3d 227, 229 (6th Cir.1995).

The fact that the federal agents waited over seventy-two hours to move Fullerton to federal custody and have a probable cause hearing surprises us. We cannot overstate the importance of the constitutional requirement that there be a prompt determination of probable cause when a person is arrested without a warrant. Federal magistrates are generally expected to be available twenty-four hours a day and many are equipped with pagers to ensure that anyone arrested without a warrant promptly receives a judicial determination of probable cause.

■ In *McLaughlin*, the Supreme Court stated that a judicial determination of probable cause within forty-eight hours of arrest will generally comply with the constitutional requirement of promptness in bringing an arrestee before a magistrate; however, after a lapse of forty-eight hours, the burden shifts to the government to establish extraordinary circumstances to justify the delay. 500 U.S. at 56–57, 111

S.Ct. 1661. The Supreme Court adopted this forty-eight hour guideline to clarify its statement in *Gerstein v. Pugh*, 420 U.S. 103, 113–16, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), that warrantless arrests are permissible, but people arrested without a warrant must be promptly brought before a neutral magistrate for a judicial determination of probable cause.

■ Fullerton's arrest was not validated by a magistrate judge until over seventy-two hours after his arrest. We hold this delay to be a violation of the standards set forth in *McLaughlin*. It is unclear from the record whether there were extraordinary circumstances which would excuse the agents' failure to obtain a warrant within forty-eight hours of Fullerton's arrest.[2] However, we hold that while the delay in bringing Fullerton before a magistrate to determine probable cause violates the rule articulated in *McLaughlin*, suppression of the pager is not an appropriate remedy for this violation.

■ There is much confusion over the appropriate remedy for a *McLaughlin* violation. The Supreme Court has specifically declined to address this issue. *Powell v. Nevada*, 511 U.S. 79, 85, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994). Fullerton makes the novel argument that the appropriate remedy for the failure to judicially determine probable cause within forty-eight hours of an arrest should be the suppression of evidence obtained incident to that

**2.** In his motion to clarify his statement made during oral argument, the Assistant United States Attorney attempted to distinguish this case from *McLaughlin* by stating that Fullerton was held on local charges until September 26, then transferred into federal custody and afforded an initial appearance within twenty-four hours. Therefore, he argues, there was no deficiency in the arrest or the timing of the initial appearance on federal charges. We find the Assistant United States Attorney's argument to be disingenuous. First, we can find no indication in the record that Fullerton was held initially on local charges. Second, although he does not cite to it, his argument appears to be based on *United States v. Alvarez–Sanchez*, which held

that 18 U.S.C. § 3501(c), governing the admissibility of custodial confessions in federal trials despite delay in presentment, does not apply if the suspect is arrested initially on local charges and held in local custody before federal charges are filed. 511 U.S. 350, 357–56, 114 S.Ct. 1599 (1994). We can easily distinguish *Alvarez–Sanchez* from the case at hand because *Alvarez–Sanchez* discusses § 3501(c), not *McLaughlin*. Furthermore, § 3501(c) applies only to people arrested for violating federal laws, *id.*, whereas *McLaughlin* sets forth a Fourth Amendment violation, 500 U.S. at 56, 111 S.Ct. 1661, which through the Fourteenth Amendment would apply equally to people arrested on state or local charges.

arrest. As authority for this proposition, Fullerton cites *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which held that illegally obtained evidence must be excluded at trial.

The Supreme Court remanded *Powell* to the Nevada Supreme Court to determine an appropriate remedy for a *McLaughlin* violation. 511 U.S. at 84–85, 114 S.Ct. 1280. As goes without saying, the Sixth Circuit is not bound by Nevada case law. We nonetheless find a comparison of *Powell* to the case at hand to be instructive. In *Powell*, the Supreme Court held that a four-day delay between *Powell*'s warrantless arrest and a judicial determination of probable cause was presumptively unreasonable under *McLaughlin*. 511 U.S. at 83–84, 114 S.Ct. 1280. *Powell* sought to suppress prejudicial statements which he made to police the day of his probable cause hearing, four days after his arrest. 511 U.S. at 79, 114 S.Ct. 1280. On remand, the Nevada Supreme Court held that harmless error analysis applies to *McLaughlin* violations, and found that the possible error in admitting Powell's prejudicial statements was harmless because the other evidence admitted at trial was so compelling that excluding the statements made during the illegal detention would not have changed the result at trial. *Powell v. State*, 113 Nev. 41, 930 P.2d 1123, 1126 (1997), *cert. denied*, — U.S. —, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997).

■ One significant difference between *Powell* and the case at hand is that Powell made his prejudicial statements after the *McLaughlin* violation occurred,

over forty-eight hours after the police arrested him and before a judicial determination of probable cause, *Powell*, 511 U.S. at 79, 114 S.Ct. 1280, whereas Clayton seized the pager from Fullerton at the time of Fullerton's arrest, before the *McLaughlin* violation occurred. Thus, the pager was not obtained pursuant to the *McLaughlin* violation. Because the agents had probable cause to arrest Fullerton on September 22,[3] the arrest, search, and detention of Fullerton during the first forty-eight hours were lawful. Because the evidence in question, the pager, was obtained incident to the lawful arrest and during the first forty-eight hours, the district court properly admitted the pager at trial. Thus, while there was a *McLaughlin* violation, suppression of the pager is not the appropriate remedy.

■ Even if the district court erred by admitting the evidence, we hold that such error would be harmless, given the extensive testimony at trial supporting Fullerton's conviction. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Nor does such an error fall into the "limited class of fundamental constitutional errors . . . that defy analysis by harmless error standards and require automatic reversal," which the Supreme Court recently addressed in *Neder v. United States*, — U.S. —, —, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, — (1999). In *Neder*, the Supreme Court held that certain constitutional errors which affect the framework within which the trial proceeds, rather than simply an error in the trial process itself, should not be subject to harmless error analysis. *Id.* at

---

3. Generally, a warrantless arrest is justified if, at the time of the defendant's arrest, police had probable cause to believe that an offense has been, is being, or will be committed. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Where a warrantless arrest is proper, a search incident to that arrest is also lawful. *New York v. Belton*, 453 U.S. 454, 461, 101 S.Ct. 2860 (1981). Jones and Clayton testified that they observed Fullerton selling cocaine on August 4 and 6. This gave them probable cause to have Fullerton

arrested on September 22. Furthermore, "a clearly authorized law enforcement officer may make a warrantless arrest in a public place even though he had adequate opportunity to procure a warrant after developing probable cause for arrest." *United States v. Watson*, 423 U.S. 411, 422, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Thus, it is not constitutionally improper that the agents did not obtain a warrant before the arrest, even though the agents had ample time to obtain a warrant between August 6 and September 22.

——, 119 S.Ct. 1827. If the district court erred in admitting the pager, which we hold it did not, such an error would fall into the latter category and would thus still be susceptible to harmless error analysis.

■ Nonetheless, we find the delay in bringing Fullerton before a magistrate for a probable cause hearing to be entirely unacceptable. While suppression of the pager is not an available remedy in this instance, the law affords Fullerton another remedy for the delay in bringing him before a magistrate. Fullerton may follow the lead of numerous other victims of *McLaughlin* violations and file a *Bivens* claim, *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Luck v. Rovenstine*, 168 F.3d 323 (7th Cir.1999); *Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir.1993); *Sivard v. Pulaski County*, 959 F.2d 662 (7th Cir.1992); *Wayland v. City of Springdale*, 933 F.2d 668 (8th Cir. 1991).

### III.

■ Fullerton also contends that he should have been granted a new trial because he was the victim of prosecutorial misconduct. Specifically, he objects to the Assistant United States Attorney's statement, during his closing argument, that the defense counsel was "trying to blow smoke in the jury's faces. This case is beyond a reasonable doubt." The standard of review for the denial of a motion for a new trial is abuse of discretion. *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir.1996).

■ In reviewing a claim of prosecutorial misconduct, we must first consider whether a prosecutor's comment was improper. *United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir.1994). Improper witness vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999). The Assistant United States Attorney indicated his belief in the credibility of the government's witnesses with his statement that the defense counsel was "trying to blow smoke in the jury's faces. This case is beyond a reasonable doubt." Therefore, his comment was improper.

■ We next consider whether the comment was flagrant. To determine flagrancy, this Court considers the following factors: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally placed before the jury; (4) the strength of the evidence against the accused. *Carroll*, 26 F.3d at 1384–85.

The prosecutor's comment that the defense counsel was "trying to blow smoke in the jury's faces. This case is beyond a reasonable doubt" pushes the boundaries of what we consider not to be flagrant nearly to the breaking point. His remarks may have misled the jury or prejudiced the accused, although any prejudice was mitigated by the fact that the district court immediately gave a curative instruction. The fact that the statement was isolated works in the Assistant United States Attorney's favor. But it strains credulity to imagine that such a statement was accidentally placed before the jury. Nonetheless, given the testimony of the two agents, the evidence against Fullerton was strong.

■ Although the Assistant United States Attorney's statement was a poor choice of words, we need not determine whether the comment was flagrant. His statement alone does not warrant a new trial. Even if the comment was determined to be flagrant, its admission would be harmless error. This isolated statement, immediately followed by a curative instruction was "harmless beyond a reasonable doubt," *Neder*, —— U.S. at ——, 119 S.Ct. at 1837. Furthermore, because the comment in no way "affected the

framework within which the trial proced[ed]", *id.* at 591, it does not fall within the limited class of fundamental constitutional errors that defy harmless error analysis, *id.* at 591. Therefore, we decline to grant Fullerton a new trial based on the Assistant United States Attorney's statement.

We have reviewed the other grounds for Fullerton's appeal and determined them to be without merit. AFFIRMED.