(5 P.3d 1004)

No. 82,400

STATE OF KANSAS, *Appellee*, v. BRAD HERSHBERGER, *Appellant*.

Opinion filed May 5, 2000.

*Brad Hershberger*, appellant pro se.

*Richard C. King*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., GREEN, J., and BUCHELE, S.J.

KNUDSON, J.: Brad Hershberger raises numerous issues on appeal following his conviction for driving while license suspended, contrary to K.S.A. 1997 Supp. 8-262, including: (a) whether failure to conduct a probable cause hearing within 48 hours after arrest requires dismissal with prejudice, and (b) whether state law requiring Hershberger to have a valid driver's license violates his constitutional right to travel.

We affirm. An illegal detention should not void a subsequent conviction absent a showing of prejudice to the defendant's substantive rights, the constitutional right to travel is not impaired by the State's licensing of motorists, and none of the other issues raised by Hershberger have legal merit.

On Wednesday, January 7, 1998, Hershberger had appeared in municipal court in Augusta and was convicted of driving while suspended and attempting to elude a police officer. Later that same day, the officer who testified at the municipal court trial saw Hershberger driving a vehicle in Augusta. Knowing Hershberger's license was suspended, the officer contacted the police department and pointed out Hershberger's vehicle to another officer. This other officer stopped the car. After Hershberger was arrested, he refused to reveal his name.

On the afternoon of his arrest, a video first appearance hearing was held. Hershberger refused to tell the judge his name, claiming it would be incriminating. The prosecutor did not have the police reports, so the matter was continued until Friday at 1:30 p.m. The judge ordered Hershberger to submit to fingerprinting and other booking procedures.

At the hearing 2 days later, charges still had not been filed; the prosecutor had not received Hershberger's driving record from the Kansas Department of Revenue (KDR). The State agreed Hershberger should be released and that a summons or warrant would be issued when the State determined and filed the proper charge.

The court agreed but told Hershberger he would not be released from jail until he complied with a prior order to complete the booking procedures. Hershberger apparently continued to refuse to comply and remained in jail until January 13, 1998, at which time the jail officials were ordered to release him.

On January 23, 1998, an information was filed charging Hershberger with felony driving while suspended in violation of K.S.A. 1997 Supp. 8-262(a)(1)(C). The State also filed an affidavit setting forth the factual basis for the charge. The State issued a summons and alias summons to Hershberger ordering him to appear on February 23, 1998, for a hearing. Hershberger received the latter summons and returned it to the district court by letter claiming he had received it "inadvertently." He later argued he had not accepted service of process, and, therefore, the court lacked jurisdiction.

Hershberger did not appear at the February 23 hearing, and the court issued a warrant for his arrest. On March 12, 1998, Hershberger was released from the Sedgwick County jail and arrested on the Butler County bench warrant. He had his first appearance in Butler County the next day, at which time a preliminary hearing was set for April. Shortly thereafter, Hershberger filed a petition for habeas corpus with the Supreme Court contending his detention was unlawful. The petition was summarily denied. *Hershberger v. Butler County*, Case No. 80,841, decided April 28, 1998.

Hershberger appeared pro se at a preliminary hearing on April 24, 1998. Various law enforcement officers testified. After Hershberger continued to deny his identity, the State called Lloyd Hershberger, the defendant's father, who identified the defendant as his son, Brad. During the hearing, Hershberger challenged the court's bench warrant and asserted numerous other legal issues included in his later motions.

Certified copies of the KDR's records were admitted at the preliminary hearing. The KDR mailed a notice of suspension to Hershberger at a Wichita post office box on July 8, 1996, suspending his license effective in 30 days. This notice also indicated Hershberger had a prior conviction for driving while suspended. Prior to his arrest in this case, Hershberger had been cited for driving with a suspended license at least twice.

Hershberger was bound over for trial and arraigned. After Hershberger refused to respond appropriately, the court entered a not guilty plea on his behalf and scheduled the matter for a jury trial. Hershberger remained in custody until April 25, 1998, at which time bond was posted.

Sometime after Hershberger was bound over to stand trial, an attorney entered an appearance on his behalf. Counsel moved to dismiss the charge, contending the KDR's notice of the suspension was not sent to Hershberger's last known address. After a hearing, this motion was denied. Hershberger's motion challenging his detention also was argued, but the matter was taken under advisement so the court could obtain transcripts from the prior hearings. Subsequently, the trial court found that the State's detention of Hershberger was not unlawful.

The case proceeded to bench trial on stipulated facts. Hershberger was found guilty of misdemeanor driving while suspended, sentenced to 1 year's confinement, and then placed on probation for 1 year. Hershberger filed a timely notice of appeal.

Hershberger filed two motions to arrest judgment, with one of the grounds being newly discovered evidence. Hershberger presented the court with a letter from KDR indicating he had a 90-day suspension remaining for driving while suspended. Hershberger asked the court to arrest the judgment based on the theory he was eligible to reinstate his license. Hershberger's motions were denied, and he has not filed a notice of appeal from any of the trial court's post-trial rulings.

*Unlawful Detention Claims*

Hershberger claims the trial court erred in not dismissing the charges against him because he was unlawfully detained by Butler County authorities. Hershberger argues the State failed to hold a probable cause hearing within 48 hours as required by *County of Riverside v. McLaughlin*, 500 U.S. 44, 47, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991), and, consequently, the charges should have been dismissed.

*McLaughlin* was a class action civil suit filed against Riverside County, challenging its practice of holding combined probable

cause hearings and arraignments for persons arrested without a warrant. Under the County's procedures, arraignments were to be held within 2 days of arrest; this 2-day requirement, however, excluded weekends and holidays. The plaintiff sought declaratory and injunctive relief requiring the County to provide quicker probable cause determinations.

In *McLaughlin*, the issue was whether the County's procedures comported with the Fourth Amendment's requirement for a "prompt" judicial determination of probable cause following a warrantless arrest as mandated by *Gerstein v. Pugh*, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). 500 U.S. at 47. In balancing the interests of the parties, the Court recognized that some delays were inevitable. 500 U.S. at 55. To provide more certainty in defining "prompt," however, the Court created a bright line rule that probable cause determinations had to occur within 48 hours of arrest in order to comply with *Gerstein*. Once the detention exceeded 48 hours, the government was required to show a bona fide emergency or justification for continuing the detention; the mere fact that a weekend intervened was not sufficient. 500 U.S. at 56-57.

Hershberger first argues a *McLaughlin* violation occurred between January 7 and January 13, 1998. We will assume for purposes of analysis that he is correct.

In *Powell v. Nevada*, 511 U.S. 79, 84-85, 128 L. Ed. 2d 1, 114 S. Ct. 1280 (1994), the Supreme Court held that the *McLaughlin* standard applied and the defendant's detention of 4 days prior to a hearing was presumptively unreasonable. In dicta, however, the Supreme Court held that even though the detention was unreasonable, this did not require that the defendant be released; nor was the defendant necessarily entitled to other relief such as suppression of evidence. Instead, the Court remanded the case to the Nevada Supreme Court to consider the appropriate remedy.

On remand, the Nevada Supreme Court found that the unreasonable delay was not grounds for voiding the defendant's conviction. *Powell v. State*, 113 Nev. 41, 44, 930 P.2d 1123, *cert. denied* 522 U.S. 954 (1997), citing *Gerstein v. Pugh*, 420 U.S. at 119 (noting the rule that an illegal arrest or detention does not void a sub-

sequent conviction). The court also found the Fourth Amendment's exclusionary rule would not automatically apply to otherwise voluntary statements made during a prolonged detention. 113 Nev. at 45-46. The Nevada court concluded that even if the trial court should have suppressed Powell's statements made after the detention became unreasonable, the failure to do so was harmless error in light of pre-arrest statements Powell had made to police. 113 Nev. at 46-47.

Other courts addressing the appropriate remedies for *McLaughlin* violations also tend to focus on suppressing evidence obtained during the prolonged detention rather than dismissing the charges as a sanction. See, *e.g.*, *U.S. v. Fullerton*, 187 F.3d 587, 590 (6th Cir. 1999), *cert. denied* 120 S. Ct. 961 (2000) (refusing to invalidate arrest and evidence seized at time of arrest because of subsequent *McLaughlin* violation). The Wisconsin Court of Appeals has held that reversal of a conviction and the granting of a new trial is not the appropriate remedy for a *McLaughlin* violation absent a showing of both deliberateness of the violation and prejudice in the ability to prepare a defense. *State v. Evans*, 187 Wis. 2d 66, 92-93 n.7, 522 N.W.2d 554, *rev. denied* 189 Wis. 2d cxii (Ct. App. 1994); *State v. Golden*, 185 Wis. 2d 763, 769, 519 N.W.2d 659, *rev. denied* 186 Wis. 2d cxvi (Ct. App. 1994).

Instead of dismissing charges or excluding evidence, many courts have found that the most appropriate remedy was for the detainee to file a civil rights action against the detaining authority. See *U.S. v. Fullerton*, 187 F.3d at 592; *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1480 (9th Cir. 1993).

Although Kansas courts have not addressed the question of the appropriate remedy for a *McLaughlin* violation, they have discussed sanctions when a detention violates statutory requirements. In *State v. Wakefield*, 267 Kan. 116, 123-25, 977 P.2d 941 (1999), the defendant sought to suppress statements he made to the police when he was not given a prompt first appearance as required by statute, which provides that an arrestee "shall be taken without unnecessary delay" before the nearest magistrate. See K.S.A. 1999 Supp. 22-2901(1).

In *Wakefield*, the defendant was detained for more than 48 hours before appearing before a magistrate. The Supreme Court held, however, that "an unwarranted delay in taking the accused before a magistrate after he or she has been arrested is not in itself a denial of due process unless that delay has in some way prejudiced the right of the accused to a fair trial." 267 Kan. at 125. The *Wakefield* holding that due process was not violated is contrary to *McLaughlin*. As discussed above, however, the *Wakefield* court was correct in assessing whether the delay caused the defendant prejudice before determining whether relief should be granted.

Ten years before *McLaughlin*, the Kansas Supreme Court held that unnecessary delay in taking a person before a judicial officer warranted dismissal of criminal charges "only under extremely compelling circumstances" in cases where no other remedy would protect against abuse. *State v. Crouch & Reeder*, 230 Kan. 783, 788, 641 P.2d 394 (1982) (defendants detained 11 days before taken to magistrate). Where the delay has prejudiced the right to a fair trial, the trial court, in its discretion, may suppress a confession or physical evidence obtained as a result of wrongful conduct. In determining a form of remedy, a trial court should consider the length of the delay, the reason for the delay, the defendant's assertion of his rights, prejudice resulting to the defendant, and the severity of the crime charged. 230 Kan. at 788. See also *State v. Davis*, 266 Kan. 638, 646, 972 P.2d 1099 (1999) (criminal charges should be dismissed only if a lesser sanction would not accomplish court's objective when prosecutor refused to comply with discovery order).

We conclude Hershberger has failed to prove his detention prejudiced his ability to prepare his defense to the charge. Consequently, dismissal of the case is not an appropriate remedy.

Hershberger also complains his subsequent detention in March and April 1998 violated *McLaughlin* because the preliminary hearing was not held until April 24, 1998. However, *McLaughlin* only applies to detentions which follow *warrantless arrests*. 500 U.S. at 56-57.

The detention during March and April was based on a warrant issued after Hershberger failed to appear in response to a sum-

mons. Warrants are issued once the magistrate finds from the charging documents and/or affidavits that there is probable cause to believe a crime has been committed and the defendant committed that crime. See K.S.A. 22-2302(1). At the time the warrant was issued, the court had the information as well as an affidavit detailing the officers' knowledge at the time of Hershberger's arrest. These documents provided sufficient probable cause to issue the warrant. Accordingly, the trial court did not err in denying Hershberger's motion to dismiss under *McLaughlin*.

## The Requirement of a Driver's License

Hershberger argues that the State had no authority to charge him with driving on a suspended license because he was using his car for personal and not commercial purposes. Hershberger's argument seems to be that because he has a constitutional right to travel, he can drive on all public streets and highways without complying with any regulation when he uses his vehicle only for personal purposes.

K.S.A. 1999 Supp. 8-235 prohibits any person from driving a motor vehicle upon a highway in Kansas unless the person has a valid driver's license or is exempted from the same. Hershberger has cited no statute which exempts him from the requirement of having a driver's license if he operates a motor vehicle on the public roadways. See K.S.A. 8-236. Instead, he essentially contends these statutes violate his constitutional right to travel.

The federal Constitution recognizes a fundamental right to interstate travel. However, this right has been recognized in cases where a statute or ordinance is designed to deter interstate travel or penalizes someone who exercises that right and the law does not serve a compelling state interest. See, *e.g.*, *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903, 90 L. Ed. 2d 899, 106 S. Ct. 2317 (1986) (limiting preference to veterans who were residents was unconstitutional); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254, 39 L. Ed. 2d 306, 94 S. Ct. 1076 (1974) (statute requiring 12 months' residency before person was entitled to county-funded medical assistance not supported by compelling state interest); *Dunn v. Blumstein*, 405 U.S. 330, 343, 31 L. Ed.

2d 274, 92 S. Ct. 995 (1972) (invalidating 12-month residency requirement for voter registration); *Edwards v. California*, 314 U.S 160, 177, 86 L. Ed. 119, 62 S. Ct. 164 (1941) (welfare law penalizing anyone bringing an indigent person into the state held unconstitutional).

Kansas has enacted a uniform act regulating traffic and establishing rules of the road. See K.S.A. 8-1501 *et seq.* These laws were not designed to deter interstate or intrastate migration, nor do they penalize someone for exercising the right to travel. States have a compelling interest in ensuring that motor vehicles are operated in a safe fashion on public roads and highways. Therefore, States may adopt "[a]ny appropriate means . . . to insure competence and care on the part of its licensees and to protect others using the highway" without violating due process. *Reitz v. Mealey*, 314 U.S. 33, 36, 86 L. Ed. 21, 62 S. Ct. 24 (1941), *overruled on other grounds Perez v. Campbell*, 402 U.S. 637, 653-54, 29 L. Ed. 2d 233, 91 S. Ct. 1704 (1971).

So also, the issue of whether driving is a natural right was laid to rest in *Popp v. Motor Vehicle Department*, 211 Kan. 763, 766, 508 P.2d 991 (1973), when the court stated:

> "It is elementary that the right to operate a motor vehicle upon a public street or highway is not a natural or unrestrained right but a *privilege* which is subject to reasonable regulations under the police power of the state in the interest of the public's safety and welfare. (*Lee v. State*, 187 Kan. 566, 358 P.2d 765 [1961].) The driver's license is not a contract or a property right in the constitutional sense, and therefore its revocation does not constitute the taking of property. The privilege is granted to those who are qualified, who comply with reasonable police power requirements in the interest of public safety and welfare, and is withheld from those who do not."

See also *State v. Bowie*, 268 Kan. 794, 999 P.2d 947 (2000) (citing with approval the above holding from *Popp*).

Appellate courts across the country have rejected the type of argument Hershberger raises. The reasoning in these cases is twofold. First, regulations pertaining to licensing and registration of vehicles do not deter one's right to travel because operating a car is only one of many ways to travel. Second, these courts recognize the purpose of such regulations is to advance the public interest in

ensuring the competency of drivers operating on the roadway and that drivers have adequate financial security to compensate potential injured parties. For these reasons, these regulatory schemes have consistently been held constitutional. See, *e.g.*, *Heninger v. Charnes*, 200 Colo. 194, 198, 613 P.2d 884 (1980) (revocation of driver's license does not burden constitutional right to travel); *State v. Cuypers*, 559 N.W.2d 435, 436-37 (Minn. App. 1997) (State's mandatory automobile insurance laws do not violate constitutional right to travel or to due process); *City of Bismarck v. Stuart*, 546 N.W.2d 366, 367 (N.D. 1996) (statutes requiring drivers' licenses and registration of vehicles constitutional); *State v. Booher*, 978 S.W.2d 953, 955-56 (Tenn. Crim. App. 1997) (same); *Carter v. State*, 702 S.W.2d 774, 778 (Tex. App. 1986) (same).

The Supreme Court of Rhode Island in *Berberian v. Petit*, 118 R.I. 448, 454-55, 374 A.2d 791 (1977), summed it up this way:

"The plaintiff's argument that the right to operate a motor vehicle is fundamental because of its relation to the fundamental right of interstate travel, [citation omitted], is utterly frivolous. The plaintiff is not being prevented from traveling interstate by public transportation, by common carrier, or in a motor vehicle driven by someone with a license to drive it. What is at issue here is not his right to travel interstate, but his right to operate a motor vehicle on the public highways, and we have no hesitation in holding that this is not a fundamental right."

There is uniform consensus that state statutes requiring drivers' licenses and vehicle registrations do not impermissibly impair a person's constitutional right to travel. Hershberger's argument that he was not required to have a driver's license is without legal merit.

### Fifth Amendment Claims

Hershberger contends police officials and the trial court violated his Fifth Amendment right against self-incrimination by penalizing him for failing to reveal his name upon arrest and in court. An officer's attempt to elicit the name and address of a person legitimately detained does not seek evidence of a testimonial nature bearing on the commission of a crime and, therefore, does not implicate the privilege against self-incrimination. *State v. Taylor*, 231 Kan. 171, 174, 642 P.2d 989 (1982). See also *California v. Byers*, 402 U.S. 424, 431-32, 29 L. Ed. 2d 9, 91 S. Ct. 1535 (1971)

(statute requiring California drivers to stop and identify themselves after being involved in an accident does not implicate the Fifth Amendment).

Hershberger also complains he was forced to be fingerprinted and photographed at jail. However, it does not violate the Fifth Amendment to compel a lawfully detained person to submit to fingerprinting and photographs as these actions are not testimonial in nature. *Schmerber v. California*, 384 U.S. 757, 764, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

For these reasons, Hershberger's complaints that his Fifth Amendment rights against self-incrimination were violated are not persuasive.

### Improper Mailing of Suspension Notice

Hershberger also argues the trial court should have dismissed the charge because the State failed to prove the KDR's suspension notice had been properly mailed to him. Hershberger argues that the notice was not sent to the street address set forth on his driver's license, and, therefore, the KDR did not send it to his last known address.

We note K.S.A. 1999 Supp. 8-255(d) provides that upon suspending driving privileges, "the division shall immediately notify the person in writing" and does not explicitly state where the notice should be sent.

The notice of suspension in this case was sent to a post office box in Wichita, Kansas, in July 1996. According to the State, the KDR's records had two addresses for Hershberger; one was the post office box to which the notice was sent. Although his driver's license bore a street address, Hershberger sent correspondence to KDR officials as early as March 1995—challenging their regulatory authority over him—using the post office box as a return address. Although the record does not clearly establish how the post office box became part of KDR's records, it is reasonable to assume it was due to Hershberger's own correspondence with the agency.

Proof of notice of mailing simply triggers a presumption of receipt of the notice. However, this court has held that the State is not required to prove a proper notice was sent in cases where a

defendant has actual knowledge that his or her license has been suspended. *State v. Campbell,* 24 Kan. App. 2d 553, 556, 948 P.2d 684, *rev. denied* 263 Kan. 887 (1997).

In this case, Hershberger clearly received the notice of suspension. He sent a letter complaining of the notice to the KDR within 10 days of its mailing. Moreover, he was convicted of driving while suspended in municipal court the morning of his arrest in this case. Hershberger clearly knew of his suspended status and continued to operate his automobile. Under *Campbell,* the question of the propriety of the notice is irrelevant under the uncontroverted facts of this case.

## Other Issues

We have carefully considered each and every other issue raised by Hershberger and conclude neither reversal nor modification of the trial court's decision is required under the law and evidence.

Affirmed.