**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Leon CAUDILL, Defendant–Appellant.**

**No. 00–5621.**

United States Court of Appeals, Sixth Circuit.

Dec. 28, 2001.

Before RYAN and BATCHELDER, Circuit Judges; and LAWSON, District Judge.[*]

LAWSON, District Judge.

On August 25, 1999, the defendant, Thomas Leon Caudill purposely shot himself two times in the leg. He intended to implicate his ex-wife in the shooting and called the Kentucky State Police to his home to investigate. In conducting a consent search of the house and outbuildings, the police discovered several marijuana plants and a quantity of processed marijuana, and the defendant was duly indicted for controlled substance violations. The defendant moved in the trial court to suppress the marijuana and a confession he made later, claiming there, as he does now on appeal, that the police exceeded the scope of their consent to search because their seizure of illegal drugs transformed the search from a shooting investigation into a controlled substance investigation.

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

The trial court rejected that argument, as do we, because the marijuana was discovered in plain view when the investigating detective was where he had a right to be at the time.

## I.

On the day in question, Thomas Caudill lived with his girlfriend, Michelle Coomer, at a residence in Lee County, Kentucky, consisting of a house and outbuildings including a large garage. Caudill told police that he was outdoors hanging laundry on his clothesline when he was struck by two gunshots which were fired from a tree line approximately 300 feet away. Caudill reportedly retrieved a handgun from the house and returned fire. Ms. Coomer also allegedly fired the handgun in the direction of the tree line.

Police were dispatched to the scene at approximately 9:35 a.m. A Lee County sheriff deputy was the first to arrive, followed by a medical unit which removed Caudill to the hospital. Detective Joie Peters, the only witness who testified at the suppression hearing, arrived at the scene at 11:45 a.m. to investigate the shooting. En route, Detective Peters learned that Caudill had been the object of two other shootings within a matter of months and that investigators suspected that at least one of the prior gunshots either had been self-inflicted or committed by Michelle Coomer so that Caudill could obtain drugs for himself at the hospital.

Several family members had gathered at the scene and complained to Peters when he arrived that the police had failed to properly investigate the prior shootings. After Peters interviewed Michelle Coomer and told her that her version of the shooting that day was implausible, Caudill's family became more upset. Coomer and Caudill's family demanded to know what happened and who had committed the shootings.

Detective Peters then told Coomer that he intended to conduct a thorough investigation.

I explained to her that I would be going through everything. I explained to her that we were going to make a video record inside the house, all the outbuildings, all the grounds, and I would determine who shot him and why. I would give it all my attention until I found out.

J.A. at 92. Peters proceeded as if all three shootings were related because a small-caliber weapon was used in each instance to inflict flesh wounds resulting in no major injury. Two of the shootings had occurred on the premises; the previous one had allegedly originated from the corner of the garage.

After Ms. Coomer asked Detective Peters to conduct the investigation, and Detective Peters told her that he intended to devote considerable time to examining the scene, Ms. Coomer left for the hospital. Several family members remained at the scene.

Detective Peters began his investigation outside around the grounds, where he found three 9–mm shell casings. He then moved inside the house and located a shirt that had blood on it; it also had bullet holes with powder residue around them. The shirt had been placed in a trash can with garbage piled on top of it. Peters also located the 9–mm pistol. While in the house, Detective Peters also found and seized drug paraphernalia and photographs depicting the defendant with marijuana.

Sometime during the search, Detective Peters learned via his dispatcher that the emergency room doctor believed that the defendant's gunshots were contact wounds with gunpowder imbedded in the skin. The defendant reportedly accused his wife of inflicting them, although this information was not considered reliable due to the defendant's medicated state.

After several hours at the scene, Detective Peters turned his attention to the garage. He testified that he intended to investigate that area because one of the other shootings one or two weeks earlier was reported to have originated there, Peters wanted to search for a weapon in the garage, and he intended to thoroughly process the crime scene consistent with his own practice and the demands of Michelle Coomer and the defendant's family members. Peters had difficulty entering the garage, however, because while Peters had been in the house, the defendant's brother crashed his car into the garage doors and now claimed to have lost his car keys. A small gap in the door remained, and Detective Peters sent a Lee County sheriff deputy with the defendant's brother to take an initial look. They found 132 marijuana plants with root systems, together with approximately two pounds of processed marijuana.

The next day. Detective Peters interviewed the defendant in the hospital. He informed the defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the defendant signed a waiver of his right to counsel and his right to silence. After Detective Peters confronted the defendant with the fruits of his search, the defendant admitted that all three prior gunshot wounds were self-inflicted, and that the marijuana belonged to him.

The defendant was indicted by a grand jury for one count of manufacturing marijuana and one count of possession with intent to distribute marijuana, both in violation of 21 U.S.C. § 841(a)(1). After the evidentiary hearing, his motion to suppress the evidence and statements was denied on the ground that the search of the defendant's premises was authorized by the valid consent of Michelle Coomer, the consent was not exceeded, and the statements were voluntary and not derivative of any illegal police conduct. Thereafter, the defendant entered a conditional guilty plea to one count of the indictment, specifically reserving the right to challenge on appeal the denial of his suppression motion.

## II.

When a ruling on a motion to suppress is challenged on appeal, we review the district court's legal conclusions *de novo*, and the factual findings under a clearly erroneous standard. *United States v. Fullerton*, 187 F.3d 587, 590 (6th Cir.1999). The district court's determination of whether the facts establish a violation of the Fourth Amendment is likewise reviewed *de novo*. *United States v. Harris*, 192 F.3d 580, 584 (6th Cir.1999). Our review is deferential, viewing the evidence "in the light most likely to support the district court's decision." *United States v. Navarro–Camacho*, 186 F.3d 701, 705 (6th Cir.1999)(quoting *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir.), *cert. denied*. 513 U.S. 907, 115 S.Ct. 274, 130 L.Ed.2d 191 (1994)).

### A.

The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The defendant has sensibly invoked the protection of this Amendment in objecting to the search and seizure of items from his residence since the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639

(1980). It is beyond debate that only "reasonable" searches are allowed by the Fourth Amendment, and that searches and seizures without a warrant are *"per se* unreasonable" except in a few well-defined and carefully circumscribed instances. *Id.* at 586, 100 S.Ct. 1371; *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Likewise, to be reasonable, searches must be based "upon probable cause." *Carroll v. United States,* 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

It is equally well-established, however, that the search of property without a warrant or probable cause, but with proper consent voluntarily obtained, does not violate the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Furthermore, "[a] search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises." *United States v. Clutter,* 914 F.2d 775, 777 (6th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991). *See also United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ("[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.").

The defendant does not quarrel with these principles, nor does he contest the lower court's finding that Michelle Coomer had common authority over the premises and consented to the search. Rather, Caudill argues that Detective Peters' search of the garage and the seizure of the marijuana was unreasonable because it exceeded the scope of Coomer's consent.

Specifically, the defendant contends that Peters obtained Coomer's consent only to search the premises in order to investigate the reported shooting. According to the defendant, the seizure of the marijuana transformed the endeavor into a drug investigation for which no consent was given, and the warrantless drug seizure thus constituted a Fourth Amendment violation.

■ It is true that when the government relies on consent as an exception to the warrant and probable cause requirements of the Fourth Amendment, the "exception[ ][is] circumscribed ... by the object of the search." *United States v. Reed,* 141 F.3d 644, 649 (6th Cir.1998). In this case, Detective Peters' avowed purpose was to "determine who shot [Caudill] and why." J.A. at 92. The defendant argues that if Peters' true intention in searching the garage was to hunt for drugs, Coomer's consent was vitiated and the entry into the garage unlawful. Citing *United States v. Blair,* 214 F.3d 690 (6th Cir.2000), the defendant posits that the seizure of the marijuana itself, preceded by the collection of photographs and drug paraphernalia from the house, caused the transformation of the investigation into a drug search.

*Blair* does not support the defendant's position. The court there held that the execution of a search warrant for documents was not a subterfuge for a drug investigation, and that the government agents properly seized and field tested narcotics found in plain view during the course of the search. *Id.* at 697–98.

The defendant misapprehends the nature of the appropriate inquiry in this case because he fails to focus on the constitutional interests at stake. The Fourth Amendment protects individuals from both unlawful searches and unlawful seizures. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). "A search compromises the individual interest in privacy; a seizure deprives the

individual of dominion over his or her person or property." *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). There is no dispute that the incriminating character of the marijuana seized in this case was immediately apparent. Thus, under the "plain view" doctrine, the contraband could lawfully be seized if Detective Peters did not violate the Fourth Amendment "in arriving at the place from which the evidence could be plainly viewed," and "he had a lawful right of access to the object itself." *Id.* at 136–37, 110 S.Ct. 2301. Since the Supreme Court in *Horton* dispensed with the "inadvertency" prong of the "plain view" test, Peters' subjective state of mind is not pertinent to the inquiry. If the search of the garage fell within the scope of the consent given by Ms. Coomer to Detective Peters, the seizure of the marijuana was proper.

■ "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). This test implies that the assessment of objective reasonableness is made as of the time of the conversation between the consenting party and the police. Consequently, information that comes to the police after the consent has been given will not affect the validity or scope of the consent, unless, of course, the party withdraws his or her consent.

■ It is not difficult to conclude that a reasonable person would understand that Coomer consented to have Detective Peters search the garage as part of his investigation. Coomer demanded a thorough inquiry. Peters told her that he intended to examine and videotape the house, the grounds and all the outbuildings. Peters considered the three shootings incidents to be related, and Coomer told him that a shooting two weeks earlier had originated near the corner of the garage. After Peters explained the expansive nature of his intended search to Coomer, Coomer left the premises and Peters went about his business. Neither Coomer nor the defendant attempted to limit Peters' access to the garage or any other part of the dwelling or curtilage, nor did anyone with authority over the premises attempt to withdraw the consent previously given.

The defendant's reasonable expectation of privacy in the contents of the garage was properly compromised by the consent to search, and his possessory interest in the marijuana was properly abridged under the plain view doctrine. The trial court correctly denied the motion to suppress the evidence.

### B.

The defendant's argument that his next-day confession should be suppressed is premised on the illegality of the search of the garage and seizure of the marijuana. He contends that giving *Miranda* warnings did not purge the taint of the supposed prior illegal police conduct and that his admission of ownership in the marijuana was the "fruit of the poisonous tree," or in this case, plant. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Having determined that the search and seizure were proper, it follows that, absent a claim of involuntariness or a violation of *Miranda,* the confession was also valid and admissible. The record demonstrates that the defendant was informed of his right to counsel and right to silence and that he knowingly and voluntarily waived those rights and freely chose to speak to the police. There was no error, therefore, in the denial of the motion to suppress the confession.

### III.

The defendant's co-tenant on the premises demanded and received a thorough investigation by the police, which included a comprehensive search of the premises themselves. That the search yielded evidence that may have been unexpected or unanticipated by the consenting party does not undermine the validity of the consent or the objective reasonableness of the police conduct. Because the search and seizure were constitutionally proper and the defendant's statements freely given, the order of the district court denying the defendant's motion to suppress is

AFFIRMED.