Nos. 83,176
83,177
83,178

STATE OF KANSAS, *Appellant*, v. ROBERT E. CUCHY, *Appellee*.
STATE OF KANSAS, *Appellant*, v. FRANKLIN D. GENT *Appellee*.
STATE OF KANSAS, *Appellant*, v. DAVID D. WHITE, *Appellee*.

(19 P.3d 152)

Opinion filed March 9, 2001.

*Jeff Elder*, Pottawatomie county attorney, argued the cause, and *Carla Stovall*, attorney general, was with him on the brief for appellant.

*Craig H. Durham*, assistant appellate defender, argued the cause, and *Niki Christopher*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a consolidated appeal taken by the State from the district court's dismissals of driving under the influence (DUI) charges against Robert Cuchy, Franklin Gent, and David White. The district court found constitutional fault with a sheriff department's policy of requiring DUI arrestees to remain in jail for 12 hours before being allowed to post bond. The State appeals pursuant to K.S.A. 22-3602(b)(1).

Each defendant was charged in Pottawatomie County with DUI in violation of K.S.A. 2000 Supp. 8-1567. At the time of their arrests, the policy at the Pottawatomie County jail was to hold DUI arrestees for 12 hours. In accordance with the policy, each defendant was confined at least 12 hours.

In each case an order was issued removing the matter from the magistrate judge to the district court. The district court dismissed the cases against Cuchy and Gent on the ground that the established policy, which required DUI offenders to serve 12 hours' mandatory jail time before being allowed to post bond, violated constitutional guarantees of due process and against double jeopardy. The trial judge referred to his own ruling in an earlier DUI case, *State v. McDowell*, Pottawatomie District Court Case No. 98TR1932, that the policy of detaining DUI arrestees for 12 hours irrespective of their ability to make bond violated constitutional protections. The district court expressly dismissed with prejudice the DUI charges against Cuchy and Gent. The State appealed from the district court's orders dismissing the DUI charges.

The order of dismissal in White's case does not specify that dismissal of the DUI charge was with prejudice. The district court dismissed the DUI charge against White on the ground that the policy of 12 hours' mandatory jail time violated the constitutional guarantee against double jeopardy. The district court referred the other charges against White back to the magistrate court for further proceedings. The State appealed from the district court's order dismissing the DUI charge.

Pursuant to Supreme Court Rule 2.06 (2000 Kan. Ct. R. Annot. 19), the cases were consolidated for appeal.

The district court's orders dismissing the charges against defendants do not include reasons why the district court concluded that the 12-hour detention policy was unconstitutional. The orders state only that double jeopardy and due process are implicated. At the hearing on White's motion to dismiss, the trial judge voiced the opinion that the 12-hour detention amounted to a precondition of bond. In that regard, he stated:

"[W]hen a judge sets bond, the judge can make any condition of bond that's appropriate for the safety of the community, including the judge can make a

person who is intoxicated sit in jail. 'Yeah, here's his bond but he's going to sit there until he's sober.' That's a safety issue. Here, the policy was a precondition of even being able to make bond[—]twelve hours and that's defective and that's the way it developed. I don't know why or how but that's the way it ended up being complied in this county and you can't have it in my opinion. You can't have an arbitrary requirement that someone's going to sit in jail as a precondition of bond and without reviewing those circumstances and seeing what the situation is, even though it is not unreasonable to detain a person for forty-eight hours without—up to forty-eight hours before that probable cause determination is made. That's a different issue. That's not what we have here. What we have here is a failure to set bond for a given period because of the policy that I think violates the law, violates the institution."

The trial judge's allusion to 48 hours was based on *County of Riverside v. McLaughlin,* 500 U.S. 44, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991), which held that a policy of providing judicial determinations of probable cause within 48 hours of warrantless arrests is generally satisfactory under the Fourth Amendment to the United States Constitution. As the trial judge noted, detention pending a probable cause determination is a different issue from detention pending appearance before a magistrate for the purpose of obtaining release on bail pending preliminary examination. The trial judge in the present case mentioned the Due Process and Double Jeopardy Clauses as bases for dismissing charges against the defendants. The question whether the Fourth Amendment "promptness" requirement might govern appearance before a magistrate for the purpose of obtaining release, as well as probable cause determinations, was not addressed by the trial judge.

The dispositive issue raised on appeal is whether the district court erred in dismissing the DUI charges against the defendants. In resolving that issue, we need to first determine if the sheriff department's 12-hour detention policy violates statutory or constitutional rights of the defendants. More specifically, we need to determine whether the policy constitutes an "unnecessary delay" under K.S.A. 2000 Supp. 22-2901 (1), or violates the Fifth Amendment Due Process and Double Jeopardy Clauses, or violates the right to make bail under Section 9 of the Kansas Constitution Bill of Rights.

The defendants were charged with DUI in violation of K.S.A. 2000 Supp. 8-1567. K.S.A. 8-2104(a) provides:

"When a person is stopped by a law enforcement officer for any violation of any provision of the uniform act regulating traffic on highways not amounting to a felony, the person shall be taken into custody and taken without unnecessary delay before a judge of the district court . . . if . . . such person is to be charged with a violation of K.S.A. 8-1567. . . ."

Post-arrest proceedings for criminal cases generally are set out in detail in Chapter 22, Article 29. K.S.A. 2000 Supp. 22-2901(1) provides in part: "If the arrest has been made on probable cause, without a warrant, [the defendant] shall be taken without unnecessary delay before the nearest available magistrate and a complaint shall be filed forthwith." The magistrate sets the "terms and conditions of the appearance bond upon which the defendant may be released." K.S.A. 2000 Supp. 22-2901(3). Defendants contend that the 12-hour-detention policy is unlawful because it creates unnecessary delay contrary to the statute. They also build constitutional theories on the foundation of the statute.

Under either K.S.A. 8-2104(a)(2) or K.S.A. 2000 Supp. 22-2901(1), the requirement is for an arrestee to be taken before a judge or magistrate "without unnecessary delay." However, the phrase "without unnecessary delay" is not statutorily defined. Nor has a definition been judicially created for it.

Since the United States Supreme Court decided *County of Riverside* in 1991, this court has considered the 22-2901(1) promptness requirement in *State v. Wakefield,* 267 Kan. 116, 977 P.2d 941 (1999). For his part in a residential burglary and the murders of the occupants, Wakefield was convicted of murder, aggravated burglary, and felony theft. He was arrested a few days after the murders on September 17 at 7:30 in the morning; he was taken before the magistrate for first appearance the afternoon of September 19. "Clearly, Wakefield was not taken for first appearance without delay." 267 Kan. at 125. The court viewed the delay as warranted, however, by the need for a thorough investigation to determine whether and against which co-felon capital murder would be charged. 267 Kan. at 124-25. Thus, there was no unnecessary delay.

*Wakefield* teaches that "without unnecessary delay" is a flexible concept dependent upon the circumstances. The State argues that the purpose of the policy to detain DUI arrestees for 12 hours before allowing them to gain release is to protect the public by making certain that the arrestee is no longer under the influence when released. Stated otherwise, it is the State's position that the "under the influence" circumstances of DUI arrests warrants the period of automatic detention. Essentially, the State argues that the delay of 12 hours in this circumstance is not an unnecessary delay under K.S.A. 2000 Supp. 22-2901 (1).

Defendants would have this court reject the State's contention on several grounds: (1) that there are widely varying degrees of "under the influence" and "under the influence" is not necessarily the same as intoxicated, (2) that public safety would be taken into account by a magistrate who would fashion the conditions of release to ensure it, and (3) that public safety is not an issue when an arrestee is released into the custody of a responsible person. Defendants cap their arguments with the assertion, which does not seem to be denied by the State, that the automatic 12-hour detention policy does not apply for other offenses, such as disorderly conduct, where a defendant may be under the influence or intoxicated.

Due to its intrinsic inflexibility, a policy of automatically detaining probable cause arrestees for a fixed number of hours might be said to violate the without unnecessary delay requirement under the flexible approach used in *Wakefield*. The lack of individualized determinations, at the least, creates circumstances in which there would be unnecessary delay for some detainees.

As to the constitutional violations, defendants first contend that K.S.A. 2000 Supp. 22-2901 codifies the Fourth Amendment case *County of Riverside*, but there is no merit to that suggestion. This statute substantially predates the Supreme Court's *County of Riverside* decision. See L. 1970, ch. 129, § 22-2901. More significantly, the statute governs appearances before a magistrate pending release rather than judicial determinations of probable cause.

Defendants also contend that K.S.A. 2000 Supp. 22-2901 creates a procedural due process right. The contention is that the statute creates a protected liberty interest for a person arrested without a warrant in being taken before a magistrate without unnecessary delay and that the 12-hour detention policy deprives the arrestee of the liberty interest without fair procedures. The only Kansas case defendants cite for this proposition offers little, if any, support. In *Davis v. Finney*, 21 Kan. App. 2d 547, 902 P.2d 498 (1995), the Court of Appeals affirmed the district court's denial of Davis' K.S.A. 60-1501 petition. The Court of Appeals declined to review Davis' claim of deprivation of due process because the record did not show that he was subjected to any discipline that represented a significant and atypical hardship not contemplated in the original sentence. 21 Kan. App. 2d at 559.

Defendants cite several foreign cases involving automatic detainment to the court's attention. In those cases the courts invalidated the practices and policies on varying grounds.

In *City of Jamestown v. Erdelt*, 513 N.W.2d 82 (N.D. 1994), the Supreme Court of North Dakota affirmed the trial court's dismissal of defendant's DUI charge on the ground that she was illegally jailed without bond. Although defendant's bond was immediately available, she was detained for 8 hours pursuant to the City's practice. Two statutes were said to apply—a public intoxication statute that had been interpreted to require individualized determinations of the degree of intoxication and of dangerousness and the bail statute that did not permit municipal courts to authorize minimum periods of detention without bail. Reading the applicable statutes so as to avoid conflict with the right to bail guarantee contained in the state constitution, the appellate court concluded that the statutes did not authorize " 'blanket minimum periods of detention, prior to release pending trial, for all DUI arrestees.' " 513 N.W.2d at 85. The constitutional provision stated in part: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall

not be required, nor excessive fin[e]s imposed, nor shall cruel or unusual punishments be inflicted." North Dakota Const., art. 1, § 11, quoted at 513 N.W.2d at 85 n. 2.

The Kansas Constitution contains a nearly identical right to bail provision. It provides: "All persons shall be bailable by sufficient sureties except for capital offenses, where proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Kan. Const. Bill of Rights, § 9.

The North Dakota case is noted in the Rutgers Law Journal's annual survey of case law developments in state constitutional law, DiCuollo, "Criminal Procedure: Trial and Post-Trial Issues," 26 Rutgers L. J. 1177 (1995). The author stated:

"The North Dakota Supreme Court, in *Jamestown v. Erdelt*, ruled that a city ordinance requiring an eight hour detention for all persons who are suspected of driving under the influence violates North Dakota's constitutional clause concerning the right to bail. The court construed the ordinance as permitting individualized determinations of whether persons are intoxicated and therefore dangerous to the public or himself if released on bail. However, the testimony of a police officer acknowledged that he followed a blanket policy of presumptive detention. Because a person can be under the influence without being intoxicated, the court reasoned, the city may not assume that all persons arrested for DUI are intoxicated. Moreover, if an arrestee posts bond and is capable of leaving with a responsible person, any danger to himself or to the public is minimized. The city's expansive interpretation of the statute, therefore, threatened the right to bail because of the automatic deprivation of liberty for noncapital offenses. Thus, although the ordinance was valid to the extent it detained DUI arrestees who are considered dangerous, the ordinance was unconstitutional as applied in this case because 'dangerous' must be an individualized determination and not a blanket presumption." 26 Rutgers L. J. at 1195-96.

In *State v. Thompson*, 349 N.C. 483, 490, 508 S.E.2d 277 (1998), defendant waived his arguments regarding state constitutional violations. On his federal constitutional arguments, the North Carolina Supreme Court concluded that a state statute governing bail and pretrial release of persons accused of committing crimes of domestic violence, "as applied to defendant under the discrete facts presented," deprived him of his federal constitutional right to procedural due process by denying him a meaningful and timely opportunity to be heard. 349 N.C. at 486, 503. The North Carolina

court declined to reach the questions of substantive due process and double jeopardy. 349 N.C. at 503.

In recognition that some individuals charged with domestic violence may pose a threat to their victims after being released on bond, the North Carolina Legislature initially empowered judges and magistrates, upon a finding that immediate release posed a danger to the victim, to order pretrial detention for a "reasonable period" while determining the conditions of the arrestee's release. Approximately 20 years later the legislature took from magistrates their authority to order preventive pretrial detention, except where no judge had acted within 48 hours of arrest. As a result, according to the North Carolina court "the arrestee 'must be held in jail,' without a consideration of the specific facts of his or her case, 'until a judge [or, after 48 hours, a magistrate] sets conditions of pre-trial release.' " 349 N.C. at 487. Under the amended statute, defendant was held in jail for 48 hours on three misdemeanor charges before being released on bond.

Following the lead of *Bell v. Wolfish*, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979), the North Carolina court considered whether the statutorily authorized detention ought to be classified as a regulatory restraint or a punitive measure and determined that it was regulatory. Based principally on that determination and Supreme Court precedents, including *County of Riverside*, the court concluded that the statute was not facially violative of either substantive or procedural due process. 349 N.C. at 492-95. Thompson's double jeopardy contention was that the pretrial detention exposed him to multiple punishment, pre-and post-trial, for the same offense. The court's determination that the pretrial detention was not punitive somewhat undercut the argument. The North Carolina court stated an additional reason why there was no facial violation of double jeopardy principles—the statute "does not *require* pretrial detention or prescribe any minimum period of detention." 349 N.C. at 496. For defendants given a pretrial release hearing immediately after arrest, there would be no issue.

Although the North Carolina court found no merit in Thompson's challenge to the facial validity of the statute, it was persuaded

that the statute was unconstitutionally applied to him. The court concluded that application of the statute

"significantly harmed defendant's fundamental right to liberty when unreasonable delay prevented him from receiving a prompt post-detention hearing before the first available judge regarding the conditions of his pretrial release. Because defendant did not obtain his hearing before a judge regarding his bail and conditions of release 'as soon as [was] reasonably feasible,' *County of Riverside*, 500 U.S. at 57, 114 L. Ed. 2d at 63, defendant was detained longer than necessary to serve the State's interest in having a judge, rather than a magistrate, determine the conditions of his pretrial release. As such, defendant was not given an opportunity to be heard 'at a meaningful time and in a meaningful manner,' *Armstrong*, 380 U.S. at 552, 14 L. Ed. 2d at 66, and the application of [the statute] violated his procedural due process rights." 349 N.C. at 502-03.

In the present case, with the "authority" for the prolonged detainment being a local policy rather than a statute, any distinction between facial and applied validity or invalidity is blurry. The district court's rulings principally addressed the invalidity of the 12-hour detainment policy, as well as its application. The district court found in each case that the defendant would have been able to make bond sooner but was detained for 12 hours pursuant to the policy.

The district court concluded that double jeopardy was implicated by the potential for dual detainment, pre-and post-trial, for the same offense. If the reasoning of the North Carolina court were to be applied here, a pivotal question would be whether the policy is punitive or regulatory. There is no evidence that would support a finding that it is punitive, and the State asserts that the purpose is public protection. As a regulatory measure, the 12-hour detention policy probably would not give rise to a double jeopardy claim.

The district court also concluded that the 12-hour detention policy violated due process. The district court's conclusion does not conform with this court's statement in *Wakefield*: "Even an unwarranted delay in taking the accused before a magistrate after he or she has been arrested is not in itself a denial of due process unless that delay has in some way prejudiced the right of the accused to a fair trial." 267 Kan. at 125. No such showing was made in the present cases.

However, we find the rationale of the North Dakota Supreme Court to be both instructive and persuasive. Construing K.S.A. 2000 Supp. 22-2901(1) in harmony with the right to make bail guaranteed by our state constitution, we conclude that the 12-hour mandatory detention of the defendants was unlawful. The detention of a person arrested for DUI is permissible if an officer determines, based upon his or her personal observations, that the arrestee is intoxicated and a danger to himself or herself or others. That individualized determination must be reasonable under the circumstances, and the officer may not assume that all persons arrested for DUI are intoxicated and dangerous. Absent such a determination, the mandatory detention policy violates K.S.A. 2000 Supp. 22-2901(1) in that an arrestee is not brought before a magistrate or judge without unnecessary delay and is denied the right to make bail.

Here the officer made no individualized determination of the intoxication and dangerousness of the defendants. The officer jailed the defendants based solely on the 12-hour detention policy. Thus, the defendants were not taken before a magistrate or judge "without unnecessary delay" and were denied their constitutional right to make bail. Therefore, the detention of the defendants was unlawful.

The State argues that even if the detention of the defendants was unlawful, dismissal was not an appropriate sanction. In the State's view, a dismissal is appropriate where a less severe sanction would not protect against abuse or where it is required in the interests of justice.

In *State v. Crouch & Reeder*, 230 Kan. 783, 788, 641 P.2d 394 (1982), the court held that dismissal of criminal charges for the State's failing to comply with the promptness provision of K.S.A. 22-2901 was inappropriate unless no other remedy would protect against abuse. Defendants were arrested on probable cause on July 3. Bond was set on the next working day, July 6, but defendants were not advised. It was not until July 10 that a formal complaint was filed charging defendants with automobile theft. They were taken before the district court on July 14 for their first appearance. Defendants were released on bond on July 17. The trial judge

dismissed the complaints for direct violation of K.S.A. 22-2901. In his view, the delay was inherently prejudicial and constituted cruel and unusual punishment. On the State's appeal, this court disagreed that defendants' 11-day detention before seeing a magistrate "resulted in such prejudice to their statutory and constitutional rights that it warranted the dismissal with prejudice of the charges against them." 230 Kan. at 784. The court reversed and remanded with directions to set aside the orders of dismissal, to reinstate the complaint, and to commence pretrial proceedings. 230 Kan. at 788. Three justices dissented on the ground that the standard of review is abuse of discretion and the trial judge had not abused his discretion. 230 Kan. at 788-89.

In *State v. Hershberger*, 27 Kan. App. 2d 485, 5 P.3d 1004, *rev. denied* 269 Kan. 937 (2000), the Court of Appeals considered a defendant's contention that the case against him ought to have been dismissed due to delay in conducting his probable cause hearing. Hershberger had been convicted of driving while his license was suspended. The Court of Appeals concluded that he "failed to prove his detention prejudiced his ability to prepare his defense to the charge. Consequently, dismissal of the case is not an appropriate remedy." 27 Kan. App. 2d at 491. The court syllabus included this statement of the guiding principle: "An appropriate remedy for failure to conduct a timely probable cause hearing will depend on the particular facts and circumstances of the case, but dismissal of charges is an extreme remedy only warranted if the prolonged detention substantially impedes a defendant's ability to prepare a defense." 27 Kan. App. 2d 485, Syl. ¶ 3.

An Ohio case illustrates how an automatic detention policy may operate to deprive a defendant, who poses no public safety threat, of the opportunity to prepare a defense. *State v. Meyers*, 59 Ohio Misc. 124, 394 N.E.2d 1037 (1978), is a reported opinion from Miamisburg Municipal Court. The defendant was arrested and incarcerated. He asked permission to be released to his father, who was willing and able to post bond and transport him to a hospital for the purpose of obtaining an independent chemical analysis. Defendant's father was turned away pursuant to the Miamisburg Police Department's policy of incarcerating persons charged with

DUI for 6 hours irrespective of availability of bond. Defendant's father "was a competent and responsible individual who could receive the custody of the defendant." 59 Ohio Misc. at 127. Defendant argued that the results of the chemical test should be suppressed because he was denied his right to post bail until after 6 hours had elapsed and consequently denied his statutory and due process right to a second chemical test. The municipal court agreed that in the circumstances, defendant did not pose a threat to the safety of the community and should not have been detained pursuant to a policy of automatic detention. Defendant's motion to suppress was granted. 59 Ohio Misc. at 127.

In none of the cases presently before this court has it been claimed that the opportunity to prepare a defense was lost as a result of the automatic detention policy. Thus, under the rule most recently stated in *Hershberger*, the automatic 12-hour detainment of these defendants by itself would not warrant dismissal. It is a simple matter to imagine, however, other circumstances, such as those in the Ohio case, in which the prolonged detention could substantially impede a defendant's ability to prepare a defense.

In *City of Jamestown*, the North Dakota Supreme Court affirmed the district court's dismissal of the case without a showing of prejudice to the defendant's right to a fair trial. 513 N.W.2d at 86. The court did so after noting that unlawful detention, absent a showing of specific prejudice to the defendant's right to a fair trial, is not sufficient to support a dismissal of the criminal charges. 513 N.W.2d at 85. However, the court went on to say:

"Despite the absence of actual prejudice, we have affirmed a dismissal of charges for unlawful detention as a sanction for institutional non-compliance and systematic disregard of the law. (Citations omitted.) We conclude this sanction is appropriate here." 513 N.W.2d at 86.

The North Dakota Supreme Court previously had decided two cases that clearly required an officer to "make individualized determinations of whether a person is apparently intoxicated and dangerous. The outcome of those determinations is left to the experience, judgment and discretion of the officer and not a blanket policy applicable to all persons arrested for DUI." 513 N.W.2d at

86. Thus, the sanction of dismissal was warranted because the city disregarded the prior decision of the court. That is not the case here.

We agree that once a decision disapproving automatic detention is made or filed by the court, subsequent dismissals for unlawful detention under a blanket policy would be justified without a need to show prejudice. Here, the district court believed the officers disregarded its ruling made in a previous case. However, the decision by the district judge in *State v. McDowell* was made after the defendants herein were arrested for DUI. Thus, the officers did not disregard a previous ruling or decision by the district court in detaining the defendants, and the dismissals were not warranted. The dismissal orders issued by the district court are reversed, and the cases are remanded with directions to reinstate the charges against the defendants.

Reversed and remanded with directions.