(276 P.3d 240)
No. 105,863

STATE OF KANSAS, *Appellee*, v. RUSSEL RICKERSON, *Appellant*.

Opinion filed May 18, 2012.

*Douglas E. Wells*, of Topeka, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREENE, C.J., GREEN and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: This case involves an administrative policy adopted by the Johnson County District Court in 1990 and readopted in 2006 that required a mandatory 6-hour detention of *all* persons arrested for driving under the influence (DUI) before they were allowed to post a scheduled bond. Under our Supreme Court's holding in *State v. Cuchy*, 270 Kan. 763, 19 P.3d 152

(2001), there is no dispute that this policy was unlawful because it did not require an individualized determination as to whether the driver is intoxicated and a danger to himself or herself or others. Russel Rickerson was arrested for DUI and, pursuant to the policy, was unlawfully denied the opportunity to post bond for 6 hours. We are asked to determine the appropriate remedy for Rickerson's unlawful detention. Because we find, as did the *Cuchy* court, that dismissal is the appropriate sanction for institutional noncompliance and systematic disregard of the law, we reverse the district court and remand the case with instructions to vacate Rickerson's conviction and dismiss the DUI charge.

## FACTUAL AND PROCEDURAL HISTORY

The facts are not in dispute. On December 2, 2009, at 8:02 p.m., Johnson County Sheriff's Deputy Jonathan Koch pulled over Rickerson because of an inoperative tag light on his truck. After further investigation, Rickerson was arrested for DUI and transporting an open container. Approximately 1 hour later, Rickerson submitted to a breath test that showed his breath alcohol content (BAC) was .158—almost twice the legal limit. See K.S.A. 2009 Supp. 8-1567(a)(2). At 10:34 p.m.—more than 2 hours after his arrest—Rickerson was booked into jail, where he was held under a policy promulgated by the district court that required a mandatory 6-hour hold on all defendants arrested for DUI before they could post the scheduled bond. Although Rickerson's son and wife, who were both sober licensed drivers over the age of 18, arrived at the police station to bond him out, they were told they could not post Rickerson's bond until the mandatory 6 hours had passed. He was finally allowed to post bond and released to his wife at 2:32 a.m.

The State charged Rickerson with DUI and two other traffic offenses.

Pertinent to this appeal, Rickerson moved to dismiss the case because he was not timely released from jail as a result of the mandatory 6-hour detention policy. He argued dismissal was justified under the holding in *Cuchy*, 270 Kan. 763, which we will discuss later in this opinion. In support, Rickerson attached to his motion four decisions by other district court judges and a magis-

trate in Jewell, Saline, Labette, and Johnson County District Courts that dismissed DUI charges based on the defendants' detentions under unlawful policies of mandatory-minimum detentions of DUI arrestees. Included was a 2002 judgment by Johnson County District Judge John P. Bennett, *State v. Vaters*, Johnson County District Court case No. 02-CR-1530, that dismissed a DUI charge under the reasoning in *Cuchy*.

*A magistrate judge granted Rickerson's motion to dismiss, and the State appealed*

After conducting a hearing on Rickerson's motion to dismiss, a district magistrate judge granted the motion "[b]ased on the arguments of the parties, case law, local law and [the *Vaters* decision]." As a result, the magistrate dismissed all of the charges and released Rickerson from his bond requirement. The State timely appealed to the district court.

*The district court conducted an evidentiary hearing on Rickerson's motion to dismiss*

The district court thereafter conducted a hearing on Rickerson's motion to dismiss, which, the court clarified at the outset, was limited to the issue of the court's policy requiring the 6-hour mandatory detention of DUI arrestees. Importantly, the State did not dispute that the policy did not require an individualized determination of whether the DUI arrestee was a danger to himself or herself or others. The evidence also showed that Johnson County eliminated the policy 5 months after Rickerson's arrest.

Deputy Koch first testified concerning the circumstances surrounding Rickerson's arrest and detention. Koch testified that Rickerson never asked Koch for additional testing and when asked if he would take the breath test, Rickerson responded, " 'Sure, I am guilty.' " Rickerson asked Koch if he could use the phone, but Koch could not recall if Rickerson told him why he wanted to use the phone. Koch responded that Rickerson would have access to a phone once he was processed and placed in the jail.

Koch confirmed that he made no individualized determination that Rickerson was a risk to anyone—other than to note that he

arrested him because he could not drive safely—because Koch felt he had no discretion to release him under the mandatory 6-hour hold policy. He, likewise, had no reason to assess whether Rickerson could appropriately be released to his wife or son.

Captain Doug Baker, who supervises the patrol unit responsible for Rickerson's detention, also testified. Baker explained that the Johnson County Sheriff's Department mandatory policy of detaining DUI arrestees for 6 hours after their arrest is part of the department's bond schedule for certain traffic offenses issued in November 2005. That policy was put into place as the result of the district court's promulgation of the same mandatory 6-hour hold policy in 1990. According to Baker, the district court's repromulgation of that policy in 2006 resulted from modifications that Baker had suggested to the chief judge of the district court that had nothing to do with the 6-hour hold policy. When he made those suggestions to the court, Baker was unaware of the 2002 *Vaters* decision, which dismissed a DUI case based on *Cuchy* and the district court's unlawful mandatory detention policy.

Rickerson also testified at the hearing on his motion to dismiss. Pertinent to this appeal, he testified that despite his request to use the phone when he got into Koch's car following his arrest, Rickerson was not allowed to use a phone until more than 3 hours after his arrest. He wanted to use the phone to call an attorney because he "knew [he] was in a lot of trouble," and he "[w]anted to know what [his] options were, what [he] needed to do to prove [his] innocence" because "[he] didn't feel like [he] was that intoxicated" based on the number of beers he drank that night. He wanted to be released earlier "[s]o [he] could get ahold of an attorney at a reasonable time so [he] could find out where [he] need[ed] [to] go to get a blood test or—and what [his] rights were," which he would not be able to do through the jail phone because he was sure it would not be a private conversation.

He further testified that by the time he was allowed to use a phone in the jail, he did not call an attorney because he "knew that [he] couldn't do anything about—[his] blood alcohol had changed by that time three and a half hours later. [He] didn't figure that—that [he] had any chance of . . . proving anything" with a blood

test. In other words, by that time, he knew that another blood test "wasn't going to do [him] any good anyway."

At the close of the hearing, Rickerson's counsel informed the district court that he was seeking dismissal of the case against Rickerson based on the unlawful detention; he did not want the alternative remedy of suppression of the breath test results. After hearing the parties' arguments, the district court took the matter under advisement.

*The district court held dismissal was not warranted as a result of Rickerson's unlawful detention*

Subsequently, the district court orally pronounced its judgment denying dismissal and later entered its written judgment. In short, the court denied dismissal upon finding the detaining officers were not at fault for following the district court's administrative detention order and because Rickerson "did not [lose an] opportunity to prepare a defense." The district judge noted at the hearing that "it is kind of embarrassing because clearly our policy was inconsistent not only with Judge Bennett's decision but more importantly perhaps with the Supreme Court decision in *Cuchy*." He then asserted that "if Mr. Wells practiced law over here a little bit more often, we might have cleaned this up a little earlier in the program." The judge went on to conclude that "the reasoning of *Cuchy* would dictate dismissal . . . only . . . if there was a lost opportunity to prepare a defense." Consequently, the court ordered the case set for trial.

*Rickerson was convicted of DUI after a bench trial on stipulated facts*

The parties subsequently submitted the case to the district court for bench trial on stipulated facts. Based on the stipulated facts, the district court found Rickerson guilty of DUI in violation of K.S.A. 2009 Supp. 8-1567(a)(2) (BAC of .08 or more as measured within 2 hours of operating a vehicle). The court's docket indicates that the State had dismissed the remaining two charges on the same date the stipulation of facts was filed. Following his sentencing—

the execution of which was stayed pending appeal—Rickerson filed this timely appeal.

## ANALYSIS

### *The decision in* Cuchy *is key*

Because *Cuchy* is key to Rickerson's arguments in this appeal, it helps to pause here to discuss the two key holdings in that case.

First, *Cuchy* held that the Pottawatomie County jail's policy that required all DUI arrestees to be held for 12 hours before they were allowed to post bail was unlawful because it did not require any individualized, reasonable determination based on an officer's personal observations that the arrestee is intoxicated and would pose a danger to himself or herself or others if released. Such an individualized determination would clearly justify a detention without bail. 270 Kan. at 764, 772. Finding persuasive the reasoning of the Supreme Court of North Dakota in *City of Jamestown v. Erdelt*, 513 N.W.2d 82 (N.D. 1994)—which found such blanket detention policies unlawful under that jurisdiction's public-intoxication statute and the state constitutional provision governing the right to bail—*Cuchy* held that such an individualized determination of the risks of danger posed by the detained defendants was required in order to harmonize K.S.A. 2000 Supp. 22-2901(1)'s requirements for first appearances with the right to make bail which is guaranteed by § 9 of the Kansas Constitution Bill of Rights. 270 Kan. at 768-69, 772.

Second, *Cuchy* considered the appropriate remedy for the defendants' unlawful detentions. Ultimately, our Supreme Court observed that the extreme remedy of dismissal based solely on an unlawful detention under such an automatic or mandatory-minimum detention policy is justified:

(1) where the defendant who posed no safety threat can show actual prejudice, *i.e.*, that the detention substantially impeded his or her ability or opportunity to prepare a defense, see 270 Kan. at 773-74; or,

(2) where, despite a lack of actual prejudice to the defendant, the sanction of dismissal is justified because of institutional noncompliance with and systematic disregard for the law,

*i.e.*, where the unlawful policy is followed in contravention of a prior court decision disapproving such automatic detentions, see 270 Kan. at 774-75.

*The unlawfulness of the Johnson County mandatory 6-hour detention policy is not challenged on appeal*

Applying the reasoning of *Cuchy* to the stipulated facts, it is clear that Johnson County's mandatory 6-hour hold policy for DUI arrestees was unlawful, and the parties do not challenge that conclusion on appeal. The parties stipulated below that Koch did not make any individualized determination that Rickerson was intoxicated and a danger to himself or others. The only question is what the remedy should be, if any.

*Our standard of review*

Appellate review of a district court's denial of a motion to dismiss on a strictly legal ground, as here, is unlimited. *State v. Garcia*, 282 Kan. 252, 260, 144 P.3d 684 (2006).

*Under the facts of this case, dismissal was the appropriate remedy for Rickerson's unlawful detention*

Rickerson argues the district court erred in not dismissing the charges because the mandatory-detention policy was the result of institutional noncompliance with, and systematic disregard for the law, in light of the prior court decisions in *Cuchy* and *Vaters*. He contends that contrary to the district court's interpretation of *Cuchy*, a showing of prejudice is unnecessary where dismissal is sought as a sanction. In the alternative, he asserts that he did present sufficient evidence of actual prejudice. The State responds that there was an insufficient showing of actual prejudice, the *Vaters* decision was not binding on other judges in the district court, and there was no showing that the jail was aware of the *Vaters* decision.

We do not find it necessary to review the factual findings and conclusion by the district court that Rickerson "did not [lose an] opportunity to prepare a defense," because we find that under the unique circumstances in this case of institutional noncompliance with and systematic disregard for the prior decision of our Supreme Court in *Cuchy*, dismissal was the appropriate remedy and the

issue of prejudice was irrelevant. The district court's oral pronouncement of its judgment indicates its decision was based on the erroneous legal conclusion that, under the reasoning in *Cuchy*, dismissal would *only* be appropriate if there was a lost opportunity to prepare a defense, *i.e.*, if there was actual prejudice. As summarized above, that was not the holding in *Cuchy*.

Moreover, the district court's separation of the sheriff's department from the district court is an artificial distinction in light of the Supreme Court's holding in *Cuchy*. It is based on an erroneous legal conclusion that the officers' detention of arrestees is excusable as long as they are relying on a departmental or court-ordered policy. As Rickerson properly notes, *Cuchy*'s point regarding the appropriateness of dismissal as a sanction—and the Supreme Court of North Dakota's point in the *City of Jamestown*, which *Cuchy* found persuasive on this issue—was not focused upon whether a court versus a law enforcement agency enacted the policy or whether there was some sort of good-faith reliance by law enforcement on an unlawful detention policy ordered by the court. Rather, *Cuchy*'s focus was whether there was " '*institutional* non-compliance and *systematic* disregard of the law.' " (Emphasis added.) *Cuchy*, 270 Kan. at 774 (quoting *City of Jamestown*, 513 N.W.2d at 86). As summarized in *Cuchy*, the North Dakota Supreme Court affirmed the district court's sanction of dismissal in *City of Jamestown* upon finding that the city had wholly disregarded that court's prior decision holding the city's practice of detaining DUI arrestees for 8 hours despite the availability of immediate bond was unlawful. 270 Kan. at 768, 774-75 (citing *City of Jamestown*, 513 N.W.2d at 85-86). Applying that same reasoning to the facts before it, *Cuchy* reversed the district court's dismissal as a sanction because the officers had not disregarded a ruling or decision by the district court that *preceded* the defendants' arrests in the consolidated cases before it. 270 Kan. at 775.

The only authority cited by the State on this issue is *City of Fargo v. Stutlien*, 505 N.W.2d 738 (N.D. 1993). In that case, the North Dakota Supreme Court found that imposition of a court-ordered mandatory-minimum detention policy for DUI arrestees was unlawful, but it declined to dismiss a DUI charge because there was

not a showing of " 'institutional noncompliance.' " 505 N.W.2d at 745. In support, *Stutlien* reasoned that the sanction of dismissal was not warranted because of the close chronological relationship between the defendants' detentions on review and habeas decisions that various district court judges had entered in other cases upon finding such detentions unlawful. 505 N.W.2d at 739, 745. But the State fails to recognize that the holding in *City of Jamestown* was based upon the fact that the city had disregarded the North Dakota Supreme Court's decision in *Stutlien*. See *City of Jamestown*, 513 N.W.2d at 84-86. This actually weighs in favor of Rickerson's argument that dismissal is an appropriate sanction.

The facts of this case are more like those in *City of Jamestown* than the facts in *Cuchy* or *Stutlien*. Here, despite decisions by both the Kansas Supreme Court in 2001 (*Cuchy*) and the Johnson County District Court in 2002 (*Vaters*), the mandatory 6-hour detention policy was enacted by the district court in 1990 and apparently remained consistently in effect and enforced until May 2010. It is difficult to find that this situation does not demonstrate an institutional noncompliance with and systematic disregard for prior court decisions in the same way as in *City of Jamestown*.

Rickerson argues that dismissal of his case "will send a message that illegal bond detentions are illegal thereby deterring these policies." We agree. Although there is nothing in the record to demonstrate that other jurisdictions continue to enforce unlawful mandatory-detention policies like that at issue here, Johnson County did so for 8 years after *Cuchy* and even repromulgated the unlawful policy during that time, so we are not convinced that all Kansas courts have abandoned such practices. In fact, we know from the opinions provided below by Rickerson that at a minimum Jewell County had such a policy at least until 2004, Saline County until 2008, and Labette County until 2008, despite the fact that *Cuchy* was decided in early 2001. We hope dismissal of the case against Rickerson as a sanction will have a deterrent effect on any jurisdictions that have chosen either knowingly or negligently to disregard Supreme Court jurisprudence.

Although we have reviewed the remainder of Rickerson's arguments on appeal and find them to lack merit, based on our ultimate ruling we need not address them here.

Reversed and remanded with directions to vacate Rickerson's conviction and sentence and to dismiss the DUI charge.