NOT DESIGNATED FOR PUBLICATION

No. 122,769

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAYLEN ROBERT VESSAR,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Opinion filed June 11, 2021. Affirmed.

*Jonathan Laurans*, of Kansas City, Missouri, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE and GARDNER, JJ.

PER CURIAM:  Daylen Robert Vessar appeals his convictions of two counts of violating the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. Vessar claims that (1) the State improperly amended the original indictment by obtaining a superseding indictment; (2) KORA is unconstitutional to the extent that it allows for a felony conviction with no mens rea element; (3) the district court erred by failing to give an instruction on mental culpability; and (4) there was insufficient evidence to support the convictions. After reviewing the record and the arguments presented by Vessar, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Vessar was convicted in Atchison County of indecent solicitation of a child and unlawful voluntary sexual relations with a child. As part of his sentence, and based on his date of birth, he needed to register as a sexual offender and report to the registration office in the county of his residence in January, April, July, and October of every year. Vessar later moved to Shawnee County and needed to report there.

Shawnee County Sheriff's Officer Ashley Previty, who works in the offender registration unit, had no record of Vessar reporting in January 2017. As a result, a Shawnee County grand jury indicted Vessar with one count of violating KORA by failing to report in January 2017. Meanwhile, Vessar also did not report for April 2017 until May 22, 2017. Vessar later moved to Wyandotte County without notifying the sheriff's office, and he did not register in Shawnee County in July as he still needed to do.

On August 27, 2018, the district court held a jury trial on the one-count indictment for Vessar's failure to report in January 2017. We need not summarize the evidence presented at that trial, but it ended in a hung jury and the district court declared a mistrial.

On February 1, 2019, a Shawnee County grand jury issued a superseding indictment, charging Vessar with three counts of violating KORA by failing to report in January 2017, failing to report in April 2017, and failing to notify the sheriff's office of his move in July 2017.

Vessar moved to dismiss the superseding indictment, arguing that the original indictment was improperly amended without leave of court in violation of K.S.A. 2017 Supp. 22-3015. The district court denied Vessar's motion to dismiss, finding the statute addressing amendments to an indictment did not apply to a superseding indictment.

On June 17, 2019, the district court held a jury trial on the three-count superseding indictment. Previty testified that an offender must register in Shawnee County if they live, work, or go to school in the county. She explained that in Shawnee County, offenders are required to make an appointment before coming in to register. On the date of the appointment, the offender comes into the sheriff's office and completes the registration form. Previty acknowledged that there have been a few "rare" occasions when the sheriff's office has allowed a walk-in to register. Previty also explained that if an offender wants to move from Shawnee County, the offender must report that fact to the sheriff's office. This requirement is also stated on the "[a]cknowledgment of the [o]ffender" form filled out by the offender at each registration.

Previty testified that Vessar did not register in January 2017. She testified that Vessar next registered on May 22, 2017, and the registration form from that appointment said, "'for April.'" But Previty explained that Vessar failed to properly register for April 2017 because May 22 is beyond the statutory deadline of April 30. Previty also testified that Vessar did not register out of Shawnee County in July 2017.

Shawnee County Sheriff's Detective Dustin Carlat testified that he checks for noncompliance after a registration deadline. Carlat stated that the law does not allow an offender any grace period for failing to register by the end of the month, but he explained that he does not start looking at a case as noncompliant until after the 15th of the next month. Carlat testified that the registration unit does not tell offenders about the informal grace period. But he acknowledged that if an offender calls to make an appointment during the last few days of the month and because of scheduling the offender cannot come into the office until the next week, his office tells the offender that as long as he or she makes that appointment they will be in compliance.

Carlat testified that Vessar did not report in January 2017 and so he "completed a case against him." He also testified that Vessar did not report in April 2017. Carlat

testified about a note on Vessar's May registration. The note stated Vessar came in and "'knows he missed April'" and when told he also missed January, Vessar "'insisted that he came in to register in January and a short-haired lady in uniform registered him.'" Carlat also discovered from the records that in July 2017, Vessar registered in Wyandotte County but he never registered in Shawnee County.

Vessar testified on his own behalf. He testified that he registered in January 2017. Vessar stated that he walked into the sheriff's office to let them know he moved to a new house and the lady, who was not the usual lady he dealt with, also let him register. As for April, Vessar stated he forgot to register by the end of the month, and he was on a road trip in Colorado. As he was driving back to Kansas, he was stopped for a traffic offense and was arrested on the warrant for failing to register in January. Vessar testified that he was on his way to register when he was arrested and if he had not been arrested, he would have registered before May 15. But Vessar admitted on cross-examination that Carlat testified he was arrested on May 16. Vessar stated that he previously had registered late, for instance in May 2016, and he was not penalized for it.

Vessar testified that he never tried to dodge the registration requirements but that it was hard to keep up with how he is supposed to register because each county does it differently. Vessar testified that he moved to Douglas County after he pled guilty to the 2014 case and he registered there but never had to register out of Atchison County. Within a year, he then moved to Shawnee County. When he moved, he stated that he did not notify Douglas County that he was leaving. Vessar said his understanding of the process was that if he moved, he had to register in the new county within three days, but no one told him to register out of the county he left.

After hearing all the evidence, the jury acquitted Vessar of failing to register in January 2017 but convicted him of failing to register in April 2017 and failing to register out of Shawnee County in July 2017. Vessar moved for a judgment of acquittal arguing

4

the statute was unconstitutional as a strict liability offense. The district court denied Vessar's motion. The district court sentenced Vessar to 19 months' imprisonment but granted probation for 24 months. Vessar timely appealed the district court's judgment.

CHALLENGE TO THE SUPERSEDING INDICTMENT

Vessar first claims the district court erred in denying the motion to dismiss the superseding indictment. More specifically, Vessar argues that under K.S.A. 2017 Supp. 22-3015(b), the State must seek the district court's permission before amending an indictment, and the State failed to do that here. Vassar argues that the appropriate remedy for the defective indictment is dismissal of the charges against him.

The State argues that adding counts two and three of the superseding indictment was "essentially a joining, or consolidation, of two additional counts." The State then argues that because the three crimes could have been joined in a single indictment under K.S.A 22-3202(1), the district court correctly denied Vessar's motion. The State asserts that even if the superseding indictment were erroneous, it did not prejudice Vessar.

This court exercises unlimited review over the district court's denial of a motion to dismiss on a strictly legal ground. *State v. Garcia*, 282 Kan. 252, 260, 144 P.3d 684 (2006) (examining denial of motion to dismiss for alleged violation of speedy trial statute); *State v. Rickerson*, 47 Kan. App. 2d 648, 654, 276 P.3d 240 (2012) (examining denial of motion to dismiss as sanction for alleged noncompliance with law). To the extent that resolution of this issue requires statutory interpretation, our review is unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

K.S.A. 2017 Supp. 22-3015 addresses the amendment of an indictment and states in part:

5

"(a) *Matters of form, time, place, names*. At any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity for the defendant to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place and names of persons when such amendment does not change the substance of the charge, and does not prejudice the defendant on the merits. Upon ordering an amendment, the court, for good cause shown, may grant a continuance to provide the defendant adequate opportunity to prepare a defense.

"(b) *Prohibition as to matters of substance, exception.*

(1) An indictment shall not be amended as to the substance of the offense charged, except

(2) The court may, upon application of the people and with notice to the defendant and opportunity for the defendant to be heard, order the substance of an indictment to be amended for the limited purpose of effecting a change of plea by the defendant pursuant to a plea agreement reached between the defendant and the prosecuting attorney. The provisions of this paragraph shall apply only to an indictment found by a grand jury impaneled pursuant to subsection (a) or (b) of K.S.A. 22-3001, and amendments thereto, and shall not apply to an indictment found by a grand jury impaneled pursuant to subsection (c) of K.S.A. 22-3001, and amendments thereto."

Vessar is correct that an indictment can be amended only in limited circumstances and the substance of an offense charged shall not be amended without leave of court. Vessar is also correct that the reasons for limiting the amendment of an indictment are because an indictment is issued by a grand jury, not the court or the State. See *State v. Carpenter*, 228 Kan. 115, 118, 612 P.2d 163 (1980) (mentioning that under the federal rules, there is a longstanding rule that an indictment may not be amended because the charge is put forth by a grand jury not the court or the prosecutor).

But Vessar's argument fails as it relies on the faulty assertion that the grand jury issuing a superseding indictment after a mistrial is equivalent to the State seeking to amend the indictment. The grand jury originally indicted Vessar with one count of violating KORA by failing to report in January 2017. After the mistrial, the grand jury

6

issued a superseding indictment charging Vessar with three counts of violating KORA. The first count was substantively identical to the original indictment charging Vessar with failing to report in January 2017. The superseding indictment added two more counts for Vessar's failure to report in April 2017 and July 2017.

In denying the motion to dismiss, the district court reasoned that the superseding indictment did not amend the first indictment but took the place of it. The district court's reasoning is persuasive. The superseding indictment was not the product of *the State*, or as the statute puts it, "the people," seeking to amend "the substance of the offense charged" in the original indictment. Instead, *the grand jury* issued a new, superseding, indictment. Thus, contrary to his assertion, the superseding indictment issued by the grand jury does not implicate K.S.A. 2017 Supp. 22-3015, and the district court did not err in denying his motion to dismiss on this basis.

In concluding this issue, Vessar incidentally asserts that because no Kansas statute expressly allows for superseding indictments, they are pure legal fiction. But he does not support his conclusory assertion that superseding indictments are impermissible with any authority or further argument. As a result, we decline to address the propriety of a superseding indictment as Vessar only incidentally raises this argument. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (stating, "'[a] point raised incidentally in a brief and not argued [therein] is deemed abandoned'").

CONSTITUTIONAL CHALLENGE TO THE KORA VIOLATION

Next, Vessar claims that K.S.A. 2020 Supp. 22-4903, the statute addressing violations of KORA, is unconstitutional to the extent that it allows for a felony conviction with no mens rea element. More specifically, he argues that allowing a KORA violation to be a strict liability offense is unconstitutional because it "nullifies" a defendant's right to argue a mistake of fact defense. Vessar then argues that the strict liability nature of the

7

offense is unconstitutional as applied in his case because it was uncontroverted that the Shawnee County offender registration unit had a "grace period" and, because of the grace period, he did not know he was committing a crime when he registered late.

The State counters that the authority Vessar relies on to establish his claim is distinguishable. The State also asserts a "harmless error" analysis because the facts do not show that Vessar could advance a mistake of fact defense to the charges against him.

A violation of KORA is a strict liability offense, requiring no mens rea element. K.S.A. 2020 Supp. 21-5203(e). Vessar asserts the strict liability nature of his offenses renders KORA unconstitutional. A statute's constitutionality is a question of law subject to unlimited review. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

We find that Vessar is not entitled to any relief on this claim for three reasons. First, Vessar's brief does not adequately frame or develop a constitutional challenge to the provisions of KORA as applied to him. Vessar only mentions a constitutional right at the beginning of his argument: "The Fifth Amendment to the United States Constitution guarantees citizens the right to notice of what precisely constitutes a crime." But he never references the Fifth Amendment, or any other constitutional provision, during the rest of his argument, nor does he cite a constitutional test to be applied to his case. Instead, he generally complains that because of the facts of his case—as he characterizes them—he had no notice that he committed a crime by failing to properly report for registration in April 2017 and July 2017. Issues not adequately briefed are considered waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

The second reason Vessar's claim fails is because his argument relies on a faulty mischaracterization of the facts. Vessar's entire argument, on this issue and the remaining issues in his brief, relies on his assertion that he "could not be said to have known he was committing a crime" because "he was explicitly told that strict compliance with deadlines

8

in KORA were not mandatory." He also asserts that he did not "kn[o]w of his status as a KORA violator after Deputy Previty told him that he was fine to register . . . late, during her imprecise 'grace period.'" In support of his assertions, he cites Previty's testimony, which he summarizes as establishing that "the 'grace periods' were less than precise."

But this summary conflicts with the evidence. As the State points out, there is no evidence that Previty or Carlat ever told Vessar before his violations that compliance with the registration deadlines was not mandatory. In fact, Vessar identifies no one who told him about a 15-day grace period. The testimony Vessar points to at best shows that the Carlat did not start his noncompliance list until the 15th of the next month. But Carlat testified that his unit does not tell offenders about the informal grace period. Instead, if an offender calls to make an appointment during the last few days of the month and because of scheduling the offender cannot come into the office until the next week, the office tells the offender that as long as he or she makes that appointment they will be in compliance.

There is no evidence in the record that Vessar was "explicitly told that strict compliance with the deadlines" was not mandatory. At one point, Vessar testified that when he registered on May 22, Previty told him that he was okay for April, but that alleged statement was after the violation had occurred so Vessar could not have justifiably relied on it. Vessar also testified that he registered late in May 2016 and was not penalized for it. But this evidence does not establish that anyone in the sheriff's office ever told Vessar that he did not need to comply with the registration deadlines.

What's more, to the extent that there is an informal grace period for an offender to report, the record showed that it lasted until the 15th of the next month. Vessar did not register for April 2017 until May 22, 2017, well outside any alleged grace period. Vessar also asserted that he was on his way to register for April when he was arrested and if he had not been arrested, he would have registered before May 15. But he admitted on cross-examination that the evidence showed he was arrested on May 16. Because the evidence

9

does not support Vessar's underlying claim that he had a valid mistake of fact defense to the charges against him, Vessar lacks standing to bring a constitutional challenge to the strict liability nature of his KORA violations. See *State v. Stoll*, 312 Kan. 726, 734, 480 P.3d 158 (2021) (holding defendant lacked standing to challenge strict liability nature of KORA violation when the evidence showed she knew she had a duty to register and she failed to successfully show that she lacked a culpable mental state).

The third reason Vessar's claim fails is because even if we reach the merits of the claim, he cites no persuasive authority to establish how the strict liability of KORA is unconstitutional as applied to him. In support of his claim, Vessar first cites *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 204 L. Ed. 2d 594 (2019), arguing that like Rehaif, he did not "kn[o]w of his status as a KORA violator after Deputy Previty told him that he was fine to register . . . late, during her imprecise 'grace period.'" But his argument fails because, as discussed above, the alleged grace period was not imprecise, law enforcement did not tell him he had a grace period to register late, and even if there were a grace period, the record establishes that Vessar registered outside that period.

*Rehaif* is also distinguishable and irrelevant to the issue at hand. In *Rahaif*, the United States Supreme Court addressed "the scope of the word 'knowingly'" in a federal statute that prohibited aliens who were unlawfully in the United States from possessing a firearm, which when "'knowingly violate[d]'" led to 10 years imprisonment. 139 S. Ct. at 2194. The Court reasoned that when the statutory text includes the term "'knowingly'" it is generally read as applying to all the later elements of the crime. 139 S. Ct. at 2196. The Court then found that it was the defendant's status as an alien unlawfully in the United States, along with his conduct, that makes the behavior wrongful. 139 S. Ct. at 2196. The Court held that under the statute, the government had to prove that the defendant knew his status and that he knew he possessed the firearm. 139 S. Ct. at 2200.

A KORA violation is not equivalent to the statute at issue in *Rahaif*. First, if there is to be any status element to KORA it would be the status of being an offender who had to register, not an offender who failed to register. Second, and more importantly, *Rahaif* did not address a strict liability offense. The Court in *Rahaif* explicitly acknowledged that in strict liability cases the Court has declined to read a mens rea requirement into the law. 139 S. Ct. at 2197. Thus, *Rahaif* does not support Vessar's argument.

The next part of Vessar's argument is less than clear. But he seems to assert that assuming this court adopts a knowledge requirement, we should find that knowledge includes "'circumstances surrounding that person's conduct . . . when such person is aware that such person's conduct is reasonably certain to cause the result.'" He then argues that because Previty testified to a "grace period," the statute must be read as requiring that he also knew Previty could not alter or extend the statutory deadlines. But as discussed above, Vessar has not established that this court should read a knowledge requirement into the statute. And, again, the record does not support Vessar's assertion that Previty told him before the fact that he could register on May 22, 2017, for April 2017. Thus, Vessar's citation to *State v. Krzeszowski*, 106 Wash. App. 638, 645-46, 24 P.3d 485 (2001), for the proposition that a person has no notice that a crime has been committed when the person relies on an "'affirmative misrepresentation of the law by [a] government official'" is irrelevant.

Vessar then cites *Lambert v. California*, 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957), for the proposition that "actual knowledge of duty to register is required for [a] conviction to stand [under the] Fifth Amendment." But *Lambert* is distinguishable in that Lambert had no notice at all that she needed to register after being convicted of a felony. 355 U.S. at 228. Vessar admitted that he knew he had to register in April 2017, but he simply "forgot" until he was returning from his trip to Colorado.

11

Finally, Vessar argues that his conviction for failing to register out of Shawnee County in July 2017 must be reversed because the jury was not "permitted to consider whether his technical non-compliance . . . w[as] intentional, or instead excused by the modifications of the KORA registration rules by Deputy Previty and Detective Carlat." But Vessar does not point to any assertion from Previty or Carlat that he did not have to register out of Shawnee County when he moved without giving any notice. Instead, the evidence showed that the requirement of giving notice of moving was stated in the "[a]cknowledgment of the [o]ffender" form filled out at each registration.

In sum, Vessar's constitutional claim fails because (1) he does not frame an actual constitutional challenge or identify a constitutional test for this court to apply; (2) he relies on a mischaracterization of the facts and based on the actual evidence lacks standing to bring his constitutional claim; and (3) he provides no persuasive and relevant authority to support his claim. Based on the record and the arguments presented in Vessar's brief, we decline to grant him any relief on this claim.

CLAIMED INSTRUCTIONAL ERROR

Next, Vessar claims that even if this court does not agree with his constitutional challenge, based on the "unique factual circumstances of this case" the district court erred by failing to give an instruction on mental culpability. The State counters that the district court did not err because intent is not an element of a KORA violation.

This court employs a multistep process to review claims of jury instruction error. First, this court must decide whether the issue was preserved. Second, it must decide whether an error occurred by determining whether the instruction was legally and factually appropriate. In addressing the first two steps, this court exercises unlimited review. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018). If error is found, this court must then determine whether the error is reversible. 308 Kan. at 1451.

12

Vessar objected to the lack of an instruction on mental culpability and requested that an instruction be given at trial. The district court denied Vessar's request, finding KORA violations are strict liability crimes. Thus, Vessar has preserved this challenge.

But Vessar fails to establish that an instruction on mental culpability was legally appropriate. As discussed above, a KORA violation is a strict liability crime requiring no culpable mental state. See K.S.A. 2020 Supp. 21-5203(3). Thus, giving an instruction on mental culpability would contradict the law and would not be legally appropriate. For this reason alone, Vessar's claimed instructional error fails.

SUFFICIENCY OF THE EVIDENCE

Finally, Vessar claims there was insufficient evidence to support his convictions. Vessar's only argument is that the evidence did not show that he intentionally failed to register. The State asserts there was sufficient evidence to support Vessar's convictions because intent is not an element of the crimes.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Vessar concedes that if failure to register is a strict liability crime, then there was sufficient evidence to support his convictions. As discussed above, failure to register as required by KORA is a strict liability crime and does not require intent. Because failure to register is a strict liability crime, Vessar's sufficiency of the evidence argument fails.

Affirmed.

13